IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RHONDA ANN MANNING ) | |
| ) | |
| v. ) | No. 3:18-0597 |
| ) | |
| NANCY A. BERRYHILL ) | |
|    Acting Commissioner of ) | |
|    Social Security ) | |

To:   The Honorable William L. Campbell, Jr., District Judge

# REPORT AND RECOMMENDATION

The *pro se* Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record. *See* Docket Entry ("DE") 14. This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a report and recommendation. *See* DE 4.

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion for judgment on the administrative record (DE 14) be **DENIED**.

# I. INTRODUCTION

Plaintiff filed an application for DIB on July 17, 2015 in which she asserted that she was unable to work due to posttraumatic stress disorder ("PTSD"), anxiety, spinal stenosis, a ruptured disc, high blood pressure, and bone overgrowth at the shoulder level. *See* Transcript of the Administrative Record (DE 9) at 69-70.[1] She alleged a disability onset date of April 2, 2013. AR 69.

Plaintiff's applications were denied initially and upon reconsideration AR 69, 79. Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Brian Dougherty on February 22, 2017. AR 33. On August 3, 2017, the ALJ denied the claim. AR 15-17. On January 26, 2018, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision (AR 1-4), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed and the Court has jurisdiction. 42 U.S.C. § 405(g).

# II. THE ALJ FINDINGS

As part of the administrative decision, the ALJ made the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of April 2, 2013 through her date last insured of December 31, 2013 (20 CFR 404.1571 *et seq*.).

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar and cervical spine, obesity, and major depressive disorder (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can sit, stand and walk for forty-five minute intervals for a total of six hours each in an eight hour workday; occasionally perform postural activities but never climb ladders; she can frequently handle and finger; and she is limited to low level detailed tasks and instructions.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on April 18, 1961 and was 52 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569(a))

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from April 2, 2013, the alleged onset date, through December 31, 2013, the date last insured (20 CFR 404.1520(g)).

AR 20-28.

## III. REVIEW OF THE RECORD

The parties and the ALJ have summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim

4

is not reviewed further. *Id*. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought; at step two, the ALJ considers whether one or more of the claimant's alleged impairments are "severe" in nature; at step three, the ALJ determines whether the impairments at issue meet or equal one of the Listings contained in the regulatory List of Impairments; at step four, the ALJ considers the claimant's residual functional capacity ("RFC") and determines whether the claimant can still perform past relevant work; at step five, the burden of proof shifts to the ALJ to assess whether the claimant, after establishing that past relevant work is no longer possible, is capable of performing other types of work. *Id*. §§ 404.1520(a)(4), 416.920(a)(4).

If the ALJ determines at step four that the claimant can perform past relevant work, the claimant is "not disabled" and the ALJ need not complete the remaining steps of the sequential analysis. *Id*. §§ 404.1520(a)(iv), 416.920(a)(iv). "Past relevant work" is defined as "substantial gainful activity" that a claimant has done within the past 15 years and that lasted long enough for the claimant to learn to do it. *Id.* §§ 404.1560(b)(1), 416.960(b)(1). If the claimant is unable to perform past relevant work, however, the ALJ proceeds to step five to determine whether, in light of the claimant's RFC, age, education, and work experience, the claimant can perform other substantial gainful employment and whether such employment exists in significant numbers in the national economy. *Id*. §§ 404.1520(a)(v), 416.920(a)(v). In evaluating a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's impairments, mental and physical, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in

5

evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (*Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court is required to accept the ALJ's explicit findings and ultimate determination unless the record as a whole is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing 42 U.S.C. § 405(g)).

### B. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps, but determined at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ found that Plaintiff's RFC allowed her to perform a range of light work with express limitations to account for her severe impairments, and that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform despite such limitations. AR 20-28.

### C. Plaintiff's Assertion of Error

Plaintiff claims that the ALJ failed to obtain relevant medical records as part of her administrative hearing. DE 14 at 5. Plaintiff therefore requests that the administrative decision be reversed. *Id.*

Reversal of an administrative decision comes in two forms, one of which is contained in sentence four of 42 U.S.C. § 405(g):

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

6

"In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala,* 25 F.3d 316, 318 (1994).

The second possibility is remand under sentence six of 42 U.S.C. § 405(g), which states the following:

> The court may ... at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

Because Plaintiff does not specify the form of relief she seeks, the Court shall construe her motion as a request under both sentence four and sentence six of 42 U.S.C. § 405(g). In reviewing this motion, the Court bears in mind its duty to afford "liberal construction" to the filings of a *pro se* claimant. *Baker v. Sec'y of Health & Human Servs.*, No. 00-1538, 2000 WL 16794488, at *1 (6th Cir. Nov. 2, 2000) (citing *Haines v. Kerner,* 404 U.S. 519, 520 (1972)).

**1. Medical Records.**

The Court first highlights the ALJ's finding that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2013. AR 20. This means that December 31, 2013 is the "date last insured" ("DLI") for purposes of Plaintiff's application, which is significant because Plaintiff can only establish her entitlement to disability benefits by proving that she became "disabled" prior to this date. *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (citing 42 U.S.C. §§ 423(a), (c)). It is Plaintiff's burden to produce evidence demonstrating

7

that her disability began before the DLI. *Seeley v. Comm'r of Soc. Sec.*, 600 F. App'x 387, 390 (6th Cir. 2015).

Plaintiff argues that the ALJ failed to obtain relevant medical records from Summit Primary Care ("Summit"), which allegedly document treatment with her primary care physician between 2009 and 2012. DE 14 at 4-5. Plaintiff suggests that the ALJ's unfavorable decision was the result of such notes being absent from the administrative record. *Id*. at 5.

Unfortunately for Plaintiff, her position does not withstand scrutiny. The ALJ in fact attempted on multiple occasions to obtain medical records from Summit, but the only records available involved treatment well after the DLI. AR 24-25, 317-25, 382, 486. Plaintiff also claimed during the administrative hearing that she possessed records documenting pain management treatment between 2007 and 2012 (AR 39), but no such records were ever provided to the ALJ. Plaintiff additionally claimed that she had been treated at East West Familycare ("East West") from 2012 until the present day (AR 40-41), yet the only records available from this facility again pertained to treatment outside of the relevant time period. AR 25, 317-25. Despite this, the ALJ provided Plaintiff with the ample opportunity to both submit written commentary about these extraneous records and participate in a supplemental administrative hearing. AR 254-55. It thus appears that the ALJ fulfilled his duty to "investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (internal citation omitted).

Plaintiff's only other assertion is that the available medical records documenting her treatment at Centerstone Mental Health Care ("Centerstone") are "incorrect." DE 14 at 4. The records at issue, which encompass the period between July of 2010 and July of 2011, indeed paint an unfavorable picture of Plaintiff's behavior throughout the course of her engagement with Centerstone. Following an initial encounter during which she "request[ed] medication

8

management" (AR 265), Plaintiff proceeded to skip nearly all of her scheduled appointments (AR 268-77, 280-82, 290-91), which itself suggests the absence of a disabling impairment. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). The most recent record from Centerstone indicates that Plaintiff was exhibiting "highly drug-seeking" behavior during her clinical appointments, with the provider suggesting that Plaintiff refused to attend most of her appointments "due to not being given controlled substances." AR 299. Centerstone staff additionally recorded irregularities from drug screenings, continued drug-seeking behavior, and numerous "contradictory statements" from Plaintiff regarding her prescription medication usage. AR 278, 285, 298, 301. These notations are regrettably consistent with a subsequent emergency department encounter in October of 2016 during which Plaintiff "literally threaten[ed] to leave [if] she doesn't get pain meds" and "walked out of [the emergency room] in [a] leg brace with no antalgic [gait], yelling at the nursing staff, refusing to sign her discharge paperwork." AR 394.

Notwithstanding such evidence, Plaintiff contends that she instead chose not to return to Centerstone after September of 2010 because she was unable to afford the treatment (DE 14 at 4), yet this claim is simply incompatible with the evidence in the administrative record. For example, Plaintiff cancelled and rescheduled appointments in April of 2011 because of conflicting medical appointments (AR 273-74), appointments in March and May of 2011 due to alleged car problems (AR 269, 275), and another appointment on March 10, 2011 because of strep throat. AR 276. There is no indication that any of these visits were cancelled due to financial constraints. Indeed, Plaintiff subsequently attended a scheduled appointment on February 7, 2011, during which she again demonstrated drug-seeking behavior and refused to participate in drug screening. AR 278. Even assuming that every one of these notes contains "incorrect" information about her behavior, Plaintiff has offered no feasible refutation of the ALJ's conclusion that her allegations regarding

9

the severity of her condition are "not entirely consistent with the medical evidence and other evidence in the record" (AR 25), a finding to which the undersigned is obligated to afford substantial deference. *See Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011) ("[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.") (internal citation omitted).[2] Accordingly, Plaintiff's argument is rejected.

The undersigned pauses to note that there is in fact objective medical evidence to support the ALJ's conclusion that Plaintiff suffers from multiple severe impairments. AR 21. Unfortunately for Plaintiff, there is no evidence to suggest the existence of a disabling condition that developed between her alleged onset date and the DLI. For example, imaging studies performed one year after the DLI revealed moderate disk desiccation at the L5-S1 level, mild bilateral foraminal stenosis, and severe cervical stenosis (though without cord impingement). AR 304-05. Additionally, a provider in March of 2015 documented cervical radiculopathy and "moderate" carpal tunnel syndrome that caused pain and numbness in Plaintiff's hands. AR 309-12. However, the only medical record from the relevant time period reveals completely normal

---

[2] The Commissioner's regulations previously required the ALJ to evaluate the "credibility" of a claimant. *See* Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 (July 2, 1996). SSR 16-3p, which replaced SSR 96-7p and was in effect at the time of the administrative hearing, removes the term "credibility" and directs the ALJ to consider a claimant's "statements about the intensity, persistence, and limiting effects of the symptoms," and "evaluate whether the statements are consistent with objective medical evidence and other evidence." 2016 WL 1119029, at *6. The Court sees little substantive difference between these two rulings, however, and notes that case law pertaining to "credibility" findings remains applicable to the undersigned's analysis. *See Pettigrew v. Berryhill*, No. 1:17-cv-01118, 2018 WL 3104229, at *14, n.14 (N.D. Ohio June 4, 2018), *report and recommendation adopted*, 2018 WL 3093696 (N.D. Ohio June 22, 2018) ("[The Court] declines to engage in verbal gymnastics to avoid the term credibility where usage of the term is most logical .... [T]here is no indication that the voluminous case law discussing and applying the credibility or symptom analysis governed by SSR 96-7p has been invalidated by SSR 16–3p.").

findings as to Plaintiff's right hand (AR 327), which supports the ALJ's non-disability finding. *See Whitaker v. Astrue*, No. 10-311, 2011 WL 1594878, at *3 (E.D. Ky. Apr. 27, 2011) (holding that a "lack of medical evidence ... amount to substantial evidence in support of the ALJ's decision"). The subsequent medical records, which document treatment beginning approximately one year after the DLI, are minimally probative. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (finding that records documenting treatment more than two years after a claimant's DLI "pertain[] to a time outside the scope of our inquiry").

The Court is therefore left only with Plaintiff's subjective complaints about the severity of her symptoms during the relevant time period, which are insufficient to establish the existence of a disabling condition. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("A subjective assessment of pain symptoms is relevant to determining whether a claimant suffers from a disability, but is not conclusive evidence establishing a disability.") (internal citations omitted). Such complaints are especially inadequate given that providers have identified Plaintiff as a "malingerer" who has both "shifted her complaint" during the course of a physical examination and even feigned problems with her gait in order to obtain narcotics. AR 384, 390, 394. Plaintiff nonetheless contends that there are "primary care records" from 2009 to 2012 that would support a finding of disability (DE 14 at 5), yet she has offered no plausible explanation as to why such records were not submitted to the ALJ, nor how records that predate her alleged onset date should have impacted the ALJ's decision.

Plaintiff additionally attaches to her brief multiple medical records from September of 2018, nearly five years after the DLI, including a letter from Dr. Richard Fishbein suggesting that Plaintiff's *current* conditions "would exclude her from the workplace." DE 14 at 10. Once again, however, such evidence does little to demonstrate that Plaintiff developed a disabling condition

11

*prior to the DLI*, which is the relevant issue. *Garner*, 745 F.2d at 390. Moreover, these records were not presented to the ALJ, which bars the undersigned from considering them absent a showing that such evidence is "new," "material," and that there is "good cause" for having failed to provide the records to the ALJ. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 278 (6th Cir. 2010) (citing 42 U.S.C. § 405(g)). Because Plaintiff provides no explanation for the omission of these records at the administrative level, and because the records do not pertain to the relevant time period, the Court declines to consider them. Plaintiff's assertion of error is therefore rejected.

## V. RECOMMENDATION

For the above stated reasons, it is recommended that Plaintiff's motion for judgment on the administrative record (DE 14) be DENIED and the Commissioner's decision be AFFIRMED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation, and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Fed. R. Civ. P. 72(b)(2). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. *Id.*; M.D. Tenn. R. 72.01(b). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (*en banc*).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge